# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

TRACY PHIL CHASTAIN,

  Plaintiff,

VS.

           **7 : 09-CV-26 (HL)**

Officer BARBER and
Warden DARRELL J. HART,

  Defendants.

## RECOMMENDATION

The Plaintiff filed this action pursuant to 42 U.S.C. § 1983 on February 19, 2009, raising allegations regarding the conditions of his confinement at Valdosta State Prison (hereinafter "VSP") in September 2008. (Doc. 2). The Court ultimately identified three (3) claims that could proceed: (1) excessive use of force by Defendant Barber, a correctional officer at VSP; (2) denial of food by Defendant Barber; and (3) failure to protect as to Defendant Hart, who was the warden at VSP during the time period in question. Presently pending herein is the Defendants' Motion for Summary Judgment. (Doc. 18). The court notified the Plaintiff of the filing of the Defendants' motion, advised him of his obligations under the law, and directed him to respond thereto within twenty (20) days of his receipt of the court's order. (Doc. 21). The Plaintiff filed an unverified response on December 3, 2009. (Doc. 22).

### Background

Plaintiff's claims arise out of events occurring during his incarceration at VSP during several days at the end of September 2008. In his complaint, the Plaintiff alleges that Defendant Barber subjected the Plaintiff to physical abuse, hitting and kicking the Plaintiff several times and denying

him food. Plaintiff alleges that he informed Warden Hart of the events by letter but that Hart did nothing in response. By means of Plaintiff's deposition testimony, the Defendants set out that at some point during the day of September 28, 2008, the Plaintiff cut his arm and penis, causing excessive bleeding and resulting in Plaintiff and his cellmate calling for help. (Doc. 18-4, depo. p. 23). The Plaintiff maintains that the cutting incident was motivated by his desire to be moved out of his cell and into the hospital area, away from his alleged gang-member cellmate. *Id.* Officer Barber and other officers responded, handcuffed the Plaintiff and his cellmate, and the Plaintiff maintains that Barber then kicked him and punched him about the face and body. *Id.* at 25. Plaintiff further maintains that as a result of the use of force, Defendant Barber "had blood all over" him. *Id.* at 26. In regard to his denial of food claim, the Plaintiff asserts that Defendant Barber refused to provide the Plaintiff with one meal and one ice serving on September 30, 2008. *Id.* at 26.

**Standard of Review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party, although the nonmoving party may not rest on the pleadings but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); *Van T. Junkins & Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

As the party moving for summary judgment, the defendant has the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of the record, including pleadings, discovery materials, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The Defendants have supported their motion for summary judgment with various affidavits, portions of the Plaintiff's deposition testimony, and photographic evidence. The Plaintiff has filed a response to the Defendants' motion, which consists of his unsworn, four-page statement regarding the events underlying his claims.

### *Official capacity claims*

Insofar as the Plaintiff brings this action against the Defendants in their official capacities, the Plaintiff's claims are without merit. A suit brought against defendant prison officials in their official capacities is in reality a suit against the state and as such is not cognizable under § 1983. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58 (1989).

### *Qualified immunity*

The Defendants assert that they are entitled to the defense of qualified immunity. "Under the qualified immunity standard recently rearticulated by the Supreme Court in *Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), we are obliged to grant qualified immunity to a [defendant] officer unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was clearly established at the time of the incident." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009).

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must

3

be apparent.'" *Hope v. Pelzer*, 122 S. Ct. 2508, 2515 (2002) (quoting *Anderson v. Creighton*, 107 S. Ct. 3043 (1987)). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. . . Accordingly, . . . the salient question . . . is whether the state of the law [at the time of the events giving rise to the cause of action] gave [the defendants] fair warning that their [actions were] unconstitutional." *Id.* at 2516.

A defense of qualified immunity is generally unavailable in cases involving excessive force because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)(citing *Hudson,* 503 U.S. 1)*; see also Fennel v. Gilstap*, 559 F.3d 1212, 1216-17 (11th Cir. 2009) ("For claims of excessive force in violation of the Eighth or Fourteenth Amendments, however, a plaintiff can overcome a defense of qualified immunity by showing only the first prong, that his Eighth or Fourteenth amendment rights have been violated.").

*Excessive force*

The Eighth Amendment forbids cruel and unusual punishment, and this prohibition governs "the treatment a prisoner receives in prison and conditions under which he is confined." *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). "[A]nalysis of an Eighth Amendment excessive force claim is contextual and requires that many factors be considered: 'the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'" *Harris v.*

*Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (quoting *Hudson*, 503 U.S. at 5). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500 (11th Cir. 1985) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

"To establish a claim for excessive force, the Plaintiff must show that (1) the Defendants acted with a malicious and sadistic purpose to inflict harm and (2) that a more than *de minimis* injury resulted." *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). The Supreme Court has recently clarified that "[t]he 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) (quoting *Hudson*, 503 U.S. at 7). Although the extent of any injury is not alone dispositive of an excessive force case, it is "one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

In arguing that they are entitled to the entry of summary judgment in regard to the Plaintiff's claim of excessive force by Defendant Barber, the Defendants have submitted affidavits from the Defendants and from various prison officials, portions of the Plaintiff's deposition testimony, and portions of the Plaintiff's prison medical records. (Doc. 18). Defendants' affidavit testimony shows that Defendant Barber and another officer discovered the Plaintiff's apparently self-inflicted

injuries on the evening of September 28, 2008, at which time Barber handcuffed the plaintiff and placed him in a separate shower. (Doc. 18-7, ¶¶ 9-11). Barber states that the Plaintiff offered no resistance to the physical restraint and that Barber "did not hit, kick, or otherwise use physical force against Inmate Chastain". *Id.* at ¶¶ 12-14. Defendants' evidence further shows that following the alleged incident, Plaintiff did not report the alleged use of force by Officer Barber to other officers or medical personnel at the prison. (Docs. 18-13, 18-14, 18-15, 18-17, 18-18, 18-19, 18-21, 18-25, 18-26).

Plaintiff's medical records show that he received medical treatment for his self-inflicted cuts on September 28 and 29, 2008, and was placed in seclusion following the cutting incident. The medical records further show that the Plaintiff had been moved in and out of the prison's Acute Care Unit, or "ACU" during the month of September, apparently based on mental health concerns of self-harm. (Doc. 18-9, pp. 90-95).

In Plaintiff's deposition testimony, specifically referenced by the Defendants in their summary judgment brief and Statement of Material Facts, the Plaintiff testifies as follows:

> A   Well, it was him [Officer Barber] and another officer named Glynn. They handcuffed me. They seen [sic] what was happening and they handcuffed my roommate then they handcuffed me. Officer Glynn took my roommate to the shower. When he did it, Officer Barber told me to sit up, I sit up, [sic] and he started swinging at me and all and he kicked me in the chest. I mean I didn't swing not one time.
>
> Q   You didn't resist him at all?
>
> A   No, I didn't.
>
> Q   Not from the very beginning when he showed up you didn't resist?
>
> A   No.
>
> Q   And when he started attacking you, you didn't resist?

6

A   I didn't. I mean, I was on the bed like this. I didn't have no – much – thing [sic] I could do.

Q   You were handcuffed at that time?

A   I was handcuffed, yes, ma'am.

. . .

Q   How many times did [Officer Barber] hit you?

A   He tried to hit me in the face twice -- he wound up hitting my arm – and he kicked me in the chest twice.

Q   He hit you two blows with –

A   Hit me one here and one right here (indicating).

Q   – his fists.

A   He tried to hit me in the face but he missed.

Q   Both biceps. And then where did he kick you?

A   Right here and over here (indicating).

Q   Okay. So it was in the chest over your heart and –

A   Over here kind of in the ribs like and over here in the chest.

Q   – in the ribs and on your right side a little lower than where the left side was?

A   Yes, ma'am.
. . .

Q   [i]s there anything you haven't told me that you think I need to know?

A   Yes. I was just reading this and he did kick me in the ankle too. I seen [sic] that in there and I just had forgot [sic] that he did kick me in the ankle too.

(Doc. 18-4, depo. pp. 24, 25, 48).

In response to the Defendants' summary judgment motion, the Plaintiff has provided a statement, which is unsworn, wherein he states that the Defendants are lying in their summary judgment motion and that he was beaten by Defendant Barber. (Doc. 22). The record does contain portions of Plaintiff's sworn deposition testimony, submitted by the Defendants, with certain sections specifically pointed to and identified by Defendants in support of their summary judgment motion, as set out above. (Doc. 18-4). Although the Plaintiff has neither incorporated this testimony by reference nor pointed to relevant portions of the testimony in responding to the Defendants' summary judgment motion, Rule 56 clearly provides for the Court's consideration of the entire record when ruling on a motion for summary judgment. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2).

The Eleventh Circuit has recognized as well that courts must consider the record as a whole in ruling on motions for summary judgment. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.")(quoting *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) ("In opposing summary judgment, the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole."). The Court is mindful, as well, of the Plaintiff's *pro se* prisoner status, which the Eleventh Circuit has noted entitles the Plaintiff's pleadings and briefs to a more liberal construction. *Rutledge v. Suntrust*, 262 Fed.Appx. 956, 957 (11th Cir. ); *see also Keith v. Stewart*, 2006 WL 2298004 (11th Cir.) (Court reluctant to apply rule 56(e) requirement to *pro se* prisoner).

Moreover, this case is factually and legally on point with the case of *John v. State of Louisiana*, 757 F.2d 698 (5th Cir. 1985), wherein the Fifth Circuit concluded that defendants' motion for summary judgment was not properly granted on the basis of the nonmoving party's failure to point to evidence already in the record, evidence which was specifically pointed to by the defendants, that established a genuine issue of material fact. Relying on prior Fifth Circuit case law, the court determined that "it is of no avail for defendants to argue that [the plaintiff] is precluded from relying on evidence in the record that raises a question of fact because defendants themselves drew the district court's attention to the evidence . . . If the district court considered the motion for summary judgment on its merits . . . the court necessarily considered the evidence [at issue]." *Id.* at 712.

The prior Fifth Circuit case relied upon by the *John* court, *Higgenbotham v. Ochsner Foundation Hospital*, 607 F.2d 653 (5th Cir. 1979), is in fact binding precedent in this circuit. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. The court in *Higgenbotham* found that "[i]t is bootless to contend, as defendants did on oral argument, that, although the [plaintiff's] deposition was filed in the record, it could properly be ignored by the judge in ruling on the motion for summary judgment because plaintiff's counsel did not in some manner bring it directly to the judge's attention. . . . [Rule 56(c)] does not distinguish between depositions merely filed and those singled out by counsel for special attention." *Id.* at 656-57. Although the *Higgenbotham* and *John* cases pre-date the Supreme Court's trilogy of summary judgment cases (*Celotex, Anderson v. Liberty Lobby,* 477 U.S. 242 (1986) and *Matsushita*) announced in 1986, the principle of reviewing the entire record as presented and pointed to by the parties remains in effect under Rule 56.

9

Thus, the Plaintiff's sworn deposition testimony is properly considered herein as part of the record as a whole and in opposition to the Defendants' summary judgment motion. Plaintiff's deposition testimony establishes that Defendant Barber attacked and beat the Plaintiff with his fists and feet, unprovoked and with no resistance offered by the Plaintiff, who remained handcuffed throughout the attack. Plaintiff testified to only bruising and swelling resulting from the attack by Defendant Barber, and Plaintiff's injuries may prove to be *de minimis* in nature. However, as noted by the Supreme Court in *Wilkins*, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins*, 130 S.Ct. at 1178. Although Defendant Barber's affidavit testimony and the affidavit testimony of other prison officials challenges the Plaintiff's version of events, and claim that Defendant Barber did not physically attack the Plaintiff, the ultimate resolution of this issue depends on a credibility determination properly decided by the trier of fact. Genuine issues of material fact remain as to the need for the use of force, the amount of force used and whether Barber acted "maliciously and sadistically" to cause harm. Accordingly, Defendants' summary judgment motion must be denied as to Plaintiff's excessive force claim.

*Denial of food*

In his complaint as well as in his deposition testimony, the Plaintiff alleges that Defendant Barber denied him one meal on one day and instructed an orderly to deny Plaintiff one serving of ice, and that these deprivations violated his constitutional rights. (Doc. 18-4, depo., p. 26). "[T]he Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive in prison. 'Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care,' and must 'protect prisoners from violence at the hands of other prisoners.'" *Hernandez v. Florida Dep't. of Corr.*, 281 Fed. Appx. 862, 865 (11th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "[T]he unnecessary and wanton infliction

10

of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment. We have said that among unnecessary and wanton inflictions of pain are those that are totally without penological justification. In making this determination in the context of prison conditions, we must ascertain whether the officials involved acted with 'deliberate indifference' to the inmates' health or safety. We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope*, 122 S. Ct. at 2514 (internal citations omitted).

However, "[t]he Constitution . . . 'does not mandate comfortable prisons', and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 111 S. Ct. 2321, 2324 (1991) (quoting *Rhodes v. Chapman*, 101 S. Ct. 2392 (1981)). The condition about which the Plaintiff complains, to wit, the deprivation of one meal and one serving of ice with no allegation of resulting injury, does not rise to the level of an Eighth Amendment violation. "Under the Eighth Amendment, a prisoner only is entitled to reasonably adequate food. A prison does not violate the Eighth Amendment by feeding a prisoner a minimal amount of food for a limited number of days." *Hernandez*, 281 Fed.Appx. at 865 (internal citations omitted). In *Hernandez*, the Eleventh Circuit found that a prisoner's allegation that he was denied lunch five (5) days per week for five (5) months did not state an Eighth Amendment violation. The court noted that "[h]e did not allege that he was deprived of the two other daily meals or that he suffered physical harm from the deprivation, and under these circumstances, he did not allege a deprivation that posed an unreasonable risk of serious damage to his health." *Id.* at 866. As found by a Florida District Court, "[u]nder no set of facts can the denial of one meal constitute a significant deprivation." *Sylvestre v. Williams*, 2009 WL 62650 (N.D.Fla.). Thus, Plaintiff's allegations, even if true, do not create a genuine issue of material fact as to whether this claim constitutes a violation of the Eighth Amendment.

*Failure to protect*

Finally, Plaintiff alleges that Warden Hart failed to protect Plaintiff from Defendant Barber's attack. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828. The deliberate indifference standard has both an objective and a subjective component. "First, under the 'objective component', a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (citing *Hudson*, 503 U.S. at 8 ). Secondly, "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer* 511 U.S. at 832. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id*. "Thus, to survive summary judgment on his section 1983, Eighth Amendment claim, [the plaintiff is] required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the Defendants' deliberate indifference to that risk; and (3) causation.*"* *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Herein, the parties agree that Warden Hart had no reason to believe that, prior to September 28, 2008, Defendant Barber posed any threat to the Plaintiff. (Doc. 18-4, depo. p. 38; Doc. 18-8, Hart Affidavit ¶¶ 9, 10). "Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency', thereby rising to the level of a constitutional tort. The known risk of injury must be 'a strong likelihood, rather than a mere possibility'". *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (quoting

*Estelle v. Gamble*, 429 U.S. 97 (1976) and *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989)). Inasmuch as Warden Hart had no knowledge, implied or otherwise, of a threat posed by Defendant Barber to the Plaintiff, Plaintiff's failure to protect claim against Warden Hart must also fail.

## Conclusion

Inasmuch as the Plaintiff has failed to sufficiently rebut the Defendants' summary judgment showing regarding Plaintiff's claims of denial of food and failure to protect, and thus these claims will not allow recovery under § 1983, it is the recommendation of the undersigned that the Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's denial of food claim against Defendant Barber and Plaintiff's failure to protect claim against Defendant Hart.

Inasmuch as genuine issues of material fact remain as to Plaintiff's claim of excessive force, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment be **DENIED** in regard to Plaintiff's excessive force claim against Defendant Barber. (Doc. 18). Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this recommendation.

**SO RECOMMENDED**, this 19th day of August, 2010.

s/ *THOMAS Q. LANGSTAFF*

**UNITED STATES MAGISTRATE JUDGE**

asb